Good morning. May it please the Court, I am Philip Bosh, appearing for Appellant Folex. I'd like to begin with the California Supreme Court's view of, in the Vandenberg case, its description of the particular danger of injustice that it describes, citing Park Lane Hosiery's U.S. Supreme Court case. When you have a third party attempting to assert collateral estoppel who is not a party to the original litigation, and in such cases, the Supreme Court stated, they require close examination to determine whether the non-mutual use is fair and appropriate in the circumstances of this case. Now, it's our view that the fairness opinion, the fairness of what occurred, is going to be determined by the totality of the circumstances. There are sections of briefs that go on and discuss various things, but at the end of the discussion, the appeal to this Court is a determination of unfairness. No case brings forth the totality of all these reasons. No case has a foreign default judgment, a foreign default judgment for declaratory relief, a third party taking advantage of a foreign default judgment, and in this case, you also have a situation where the restatement, which is followed in California, the restatement says that no court in this country should give greater effect to the judgment than would be given by the court of the country that issued it. And China does not honor collateral estoppel. So you have a situation where the district court gave greater effect to the judgment than it would have received in China alone. The totality of all of these reasons are going to lead, hopefully, to the conclusion of unfairness because you start with the district court's recognition and statement that there was an informal notice that was followed by formal notice. And what is referred to by informal notice is a general awareness of a legal threat coming from somewhere. And never before has that general awareness of a legal threat of some kind by somebody constituted notice for due process of the claims made against a particular party. Now, there's no dispute that the statement of claim or the complaint or whatever it was was not given to this party. There's testimony in the record at 305 and at 62 about this attempted service by government officials who showed up and confronted FOLEX people while in China. But there's no question they didn't give them the statement of claim or complaint. Let me start with which law we look at in determining whether service was proper in this case. Do we look at Chinese law and look to under what circumstances Chinese law allows service by publication? Or do we look to California law because this is a diversity case? Well, I think we're going to prevail in either case. But I'd like to look to Chinese law first. The Chinese law allows for publication, publication if all other methods fail, including mailing. And mailing was never attempted. But once publication is the default method, the publication statute in China requires that the publication occur in China and abroad. And this is tantamount when there's no dispute that it did not happen abroad. There was no attempt to publish abroad. This is tantamount to if you know someone lives in New York, you don't go by and you're down to publication notice, you don't go by a little ad in Billings, Montana. This is a publication in a Chinese newspaper with no publication abroad, which is required by the Chinese statute. Now, I think that the question of which law, this court makes a judgment as to whether due process has been satisfied. And in no case really has there been a finding of due process where there's no personal service. So you look at even if there could be some application of the Chinese statute, which I have argued is not true, but even if there could be, that could be contorted into providing personal service, this court has the ultimate determination under Vandenberg and these other cases to determine whether in the circumstances of this case the application was fair. So if we look to California law, then it seems that you would prevail because there's no publication in California. And you're saying even under Chinese law you would also prevail because there's no publication abroad. And some indication in the record that the newspapers available online wouldn't do it? Correct. But also I would say even under Chinese law it was premature to go to the very last resort. Chinese law is pretty detailed. And even under Chinese law you have the similar situation that you have in California. In the Donnell v. Bedellian case, California says that not only is it last resort, but you're supposed to, before you go to publication, you're supposed to take all reasonable steps that a person who really wants to give notice would have taken under the circumstances. And in this case, if you really wanted to give notice, you could have handed it to him. You were right there. You could have mailed it to him because there's all kinds of mail correspondence in the record. There's no indication they did either one. They resorted to publication and then they resorted to publication with no intention and no expressed intention, no evidence that it even occurred, where a publication would be designed to actually give the default notice to someone. It's supposed to at least... Weren't there some attempts at personal service? There was. The first attempt at personal service, at least they say it was an attempt at personal service, was what was described earlier at when these two government officials came to meet with FOLEX officers. They actually showed up, but they didn't leave any documents. They didn't serve any documents. There's no evidence they had any documents. So to call that an attempted service, there was an exchange. These two people were asked for their identification. They were threatening. They wanted to know about where is the passport of the person they're confronting, and the exchange terminated with no exchange of information. That's not an attempted service. An attempted service, if you really want someone to have notice, you hand them the document that you are attempting to obtain adjudication on. And even in China, the Chinese statute is similar to the Donnell v. Bedellian issue, where you have to make reasonable efforts before you resort to publication. And when you resort to publication, you really need to make a publication that has some hope of ever reaching its intended destination. So I'd like to reserve a minute or two, but in conclusion here, this is a situation where a declaratory relief judgment is not under the Uniform Act. It harkens back to the days where the decrees of despots were not given any type of recognition in this country. The statute for the Uniform Act is limited to money judgments. This is probably as unfair a situation as we could possibly hope to present because it's a perfect storm of all of these things that calculate to a conclusion of unfairness. Thank you. Thank you. Good morning, Your Honors. May it please the Court, David Kesselman on behalf of the APLE, OTAP Precision Industries. It's our position, Your Honors, that the District Court decision absolutely should be affirmed. The District Court properly granted collateral estoppel effect to an earlier adjudication by the PRC Court on the exact same contract that is being sued upon in the United States. Now, this whole notion that due process was lacking for the appellant is simply belied by the record. There's no question, it's undisputed in the record, that the PRC Court had both subject matter jurisdiction and personal jurisdiction. Folex had been doing business for a decade or more in China. It had an office in China. It had a lawyer in China. And it contractually agreed to be bound by PRC law and to adjudicate any disputes. Let me ask you about personal service. With regard to Chinese law, does publication require publication both at home and abroad? It appears, Your Honor, yes, that the statute requires publication both domestically and abroad. Now, getting to that. And the evidence in the record demonstrates that there was publication abroad in this case. The evidence, Your Honor, is from the PRC Court judgment itself. The PRC Court judgment, the PRC Court itself determined that jurisdiction was proper. Now, would it have been nicer if we had a direct statement that the publication notice was abroad? Yes, it would. But it seems pretty clear, if you read the totality of the decision, that the court is saying there were efforts at personal jurisdiction by handing the documents under the Cade Convention. Those failed. And to counsel's point, there were multiple attempts, as Judge Fragerson suggested, at personal service here. And then from there, the notion that publication was adequate is clearly suggested by the court decision itself. So you've got a People's News publication. This is a formal body, the equivalent, as Professor DeLisle, an expert in Chinese law, has attested to in declaration and was not disputed by Professor Pirenboom, their expert, that the People's News is the publication that's put out by the equivalent of the PRC Supreme Court. This is an official body, and it seems clear that if the publication was in the newspaper, the procedures, the standard procedures would also appear via Internet and therefore abroad. And the problem, Your Honors, not a problem of our making, it's that the archives for these Internet postings only go back approximately six months. And that's attested to by Professor DeLisle. And again, appellant does not challenge that. So you can only search electronically. But they, the appellant, has proffered no evidence on this record to suggest that there was any deficiency in the notice abroad. And as this court noted but did not decide in the 1995 decision, the Bank Mele of Iran case, it's the appellant's burden in this instance, I would suggest, to proffer some evidence to suggest that notice was inadequate. Otherwise, it's our view that this court should grant deference to the PRC court's judgment that it had jurisdiction. And there are a series of cases where the courts in the United States have held that on issues of interpreting jurisdiction, deference should be given to the foreign court. And this, when you step back, as counsel suggested, and look at the totality of the circumstances here, due process and fairness cannot possibly be questioned. Because the whole purpose of the publication notice, the whole purpose of service, is to ensure that the other party has actual notice. And as this court expressly stated in the In re Cantrell decision, when you're dealing with a default judgment based upon publication notice, the question to be asked is if the defendant has been personally served with summons, and now this is directly from the case, so I'm quoting, or has actual knowledge of the existence of litigation. There's no question that the appellant had actual knowledge of the existence of this litigation. In its August 20th, 2006 letter to PRC authorities, the appellant expressly stated that it knew not only of the existence of litigation, but that the actual subject matter of what was being sued upon in the PRC court, when they stated, quote, the summons of the lawsuit filed by the institute, that's LSMRI, suing that we did not agree to their demand for termination of the agency agreement. That's at the supplemental excerpt of record 0064. They stated back in 2006 they knew what this was about, and they were on notice of the proceedings. Then there's again a statement in the record where the appellant admits under oath in 2008 that he was aware of the proceedings, and then even if you take the appellant at its word that it didn't get the judgment until July 12th, 2010, based on this court's teachings in In re Cantrell, there was still sufficient time for the appellant to move in China to set aside the default judgment. Professor Dalil, again not contested by their expert, expressly explains that in China, not only do you have an opportunity to set it aside for up to two years, but that it's a de novo review, a second trial on the merits. So they had every opportunity, and as the In re Cantrell decision makes clear, if you're on actual notice, you have an opportunity to set aside the default judgment, and you fail to do so, then due process has been satisfied, and you've sat on your rights. And so we would conclude, Your Honors, with a quote from your own direct mail decision, this court's decision in 1988, that if a party, quote, has received actual or constructive notice of the filing of the action and failed to answer, his conduct is culpable. And we submit, Your Honors, that in this instance, there's no question but that Folex was aware, it sat on its rights, the district court judgment absolutely should be affirmed. And with respect to the cross appeal on the fee motion, Your Honors, it's our position that Civil Code Section 1717 applies, that the district court should have awarded fees, but we'll submit that issue on the papers unless Your Honors have specific questions. Thank you very much. Your Honors, the Cantrell case is the closest and best case that counsel can cite, and I might point out that in Cantrell, the court actually granted summary judgment in favor of the person standing in my client's shoes. The dicta that he's talking about from Cantrell has to be distinguished because in that case you are not dealing with third party estoppel, you are dealing with the same parties. You are not dealing with a foreign judgment. You are dealing with a California judgment against a California party. You are not dealing with declaratory relief. That's the best case he has. This case is a situation where there was no purpose to ensure actual notice. Contending that there's actual notice when never ever is this party given the complaint or the statement of claim and its general awareness of litigation as opposed to the actual notice is wrong. It's unfair. It's not consistent with the authorities in this circuit, and it is contested. Of course it's contested. The experts offered the opinion that there was no publication abroad, and there was no attempt to make it available in a place where publication notice could even possibly be read by this party. Publication is a last resort because it so rarely actually gives notice. So you do that at the very end when you've exhausted all other possibilities, which never happened here. There was never once a reason given, nothing on why it is that they just didn't mail it to these people, even though they had mail contact back and forth. Why didn't they leave it with them when they were talking to them? If they had it, if they were really attempting service, why didn't they give it to them? They never did. Notwithstanding communications with these people over a six- to ten-year period, regular communications, not once did they tender the complaint. Instead, they published in China alone, not China and abroad, and that doesn't even qualify under Cantrell. Thank you. Okay. Thank you. Well, that concludes our work for today, and we'll be back here at 9 a.m. tomorrow morning. Thank you very much.
judges: Pregerson, Fernandez, Nguyen